IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ARTHUR PHILLIPS                         :

                                        :

    v.                          :  Civil Action No. DKC 14-0980

                                        :

DR. COLIN OTTEY, et al.                 :

                                        :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this case are the following motions: (1) a motion to quash subpoena, filed by Plaintiff Arthur Phillips ("Plaintiff") (ECF No. 79); (2) a motion for protective order, filed by Defendants Colin Ottey, Ava Joubert, Greg Flury, Katie Winner, Carla Buck, Kristi Cortez, and Wexford Health Sources, Inc. ("Defendants") (ECF No. 85); (3) Defendants' motion to seal (ECF No. 86); (4) Plaintiff's motion to seal (ECF No. 91); and (5) Plaintiff's motion for leave to file a supplemental complaint (ECF No. 92). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to quash will be denied; the motion for protective order will be granted; the motions to seal will be granted; and Plaintiff will be ordered to supplement his motion for leave to file a supplemental complaint with his proposed supplemental complaint.

## I.   Background

Plaintiff is an inmate currently incarcerated at North Branch Correctional Institution ("North Branch") in Cumberland, Maryland.[1]  He filed a civil rights complaint under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs in violation of the Eighth Amendment and unlawful retaliation under the First Amendment.  Plaintiff seeks money damages from Defendant Wexford Health Services, Inc. ("Wexford"), a private medical corporation contracted to provide medical treatment to inmates of Maryland correctional institutions, and the individual Defendants, who are medical professionals.  (ECF Nos. 1; 45).  Plaintiff alleges that he was denied appropriate treatment for knee pain and instability caused by an anterior cruciate ligament tear and for keloids.  (ECF No. 45 ¶¶ 20-22).  In his amended complaint, Plaintiff identified March 6, 2013, through March 8, 2014, as the "relevant timeframe" for his allegations, all of which occurred during his incarceration at North Branch.  (*Id.* ¶¶ 7, 27).  Plaintiff did not allege an ongoing denial of medical treatment or seek injunctive relief.  The scheduling order deadline for the joinder of additional parties and amendment of pleadings was August 31, 2015 (ECF No.

---

[1] Plaintiff was incarcerated at North Branch during the time period in which his alleged harms occurred.  (ECF No. 45 ¶ 7). He was incarcerated on a provisional basis at the Patuxent Institution ("Patuxent") in Jessup, Maryland, for evaluation for admission to a rehabilitation program between May 2015 and April 2016.  (*See* ECF Nos. 93-6, at 1; 93-7, at 1).  After entrance to that program was denied, Plaintiff returned to North Branch.

43), and Plaintiff filed the amended complaint on that date (ECF No. 45).   Discovery deadlines have been postponed several times at the parties' request (*see* ECF Nos. 54; 63; 76; 82; 102), but fact and expert discovery will now close on November 14, 2016, and the dispositive pretrial motions deadline is January 27, 2017 (ECF No. 102).

On June 15, 2016, Plaintiff filed a motion to quash Defendants' subpoena seeking the settlement agreement in *Phillips v. Murray, et al.*, No. DKC-11-0302 (D.Md.), from Corizon Health, Inc. ("Corizon").[2]   (ECF No. 79).   Defendants responded in opposition (ECF No. 84), and Plaintiff filed a reply (ECF No. 89).   On July 15, Defendants moved for a protective order permitting them to produce Plaintiff's psychological evaluations, which are included in his requested medical records, as designated for "attorney's eyes only."   (ECF No. 85).   Defendants have also moved to seal those records, which were attached as an exhibit to their motion.   (ECF No. 86).   Plaintiff filed a response in opposition to the motion for protective order and also filed a motion to seal an exhibit to

---

[2] Plaintiff filed suit against Corizon, a prior medical contractor for North Branch, and individual medical professionals, including Defendants Ottey and Flury, in 2011, alleging similar civil rights violations related to the same health conditions. *See* Amended Complaint, *Phillips*, No. DKC-11-0302 (D.Md. Feb. 17, 2012), ECF No. 42 ¶¶ 20-22. That action was settled in 2012, *see* Order, *Phillips*, No. DKC-11-0302 (D.Md. Nov. 19, 2012), ECF No. 85, and Plaintiff filed a stipulation of dismissal with prejudice as to Corizon, the only remaining defendant, on March 4, 2013, Stipulation, *Phillips*, No. DKC-11-0302 (D.Md. Mar. 3, 2013), ECF No. 90.

his response (ECF Nos. 90; 91), and Defendants replied (ECF No. 94).   Finally, Plaintiff filed a motion for leave to file a supplemental complaint.   (ECF No. 92).   Defendants opposed this motion (ECF No. 96), and Plaintiff replied (ECF No. 101).

## II.  Motion to Quash

Plaintiff has moved to quash Defendants' subpoena, or subpoenas, to Corizon for a copy of the confidential settlement agreement in *Phillips*, No. DKC 11-0302.[3]   The subpoenas were issued on June 9, 2016, and served by certified mail.   (ECF Nos. 84-7; 84-8).   Defendants' counsel served copies upon Plaintiff's counsel by first-class mail, also on June 9.   (ECF Nos. 84-7; 84-8).   Plaintiff moved to quash on June 15, stating that his motion "is based on Federal Rule of Civil Procedure 45(a)(4), 45(d)(3), Federal Rules of Evidence 401 and 408."   (ECF No. 79).   He argues in reply that the subpoena seeks irrelevant information outside the scope of discovery under Fed.R.Civ.P. 26(b)(1).   (ECF No. 89, at 1-3).[4]   Plaintiff also argues that the subpoena should be quashed because Defendants did not serve a

_____

[3] Plaintiff's motion addresses one subpoena, served on the custodian of records for Corizon Health, Inc. (ECF No. 79-1), but Defendants note that they also served an identical subpoena on the custodian of records for Corizon, LLC (ECF No. 84-8). Defendants first sought the settlement agreement through discovery. (ECF No. 84, at 2). After Plaintiff objected on the ground that the settlement was confidential (ECF No. 84-4, at 35-36), Defendants served the third-party subpoenas rather than filing a motion to compel.

[4] Although Plaintiff's motion stated that a memorandum of law was forthcoming (ECF No. 79), and the court requested that counsel supplement the motion with a memorandum in support on June 27 (ECF No. 83), no memorandum was filed.

copy on Plaintiff before serving Corizon, as required by Fed.R.Civ.P. 45(a)(4). (*Id.* at 3-5). Defendants argue that relevant confidential agreements are discoverable in the Fourth Circuit, and that "the agreement may impact both Phillips' claims and the Healthcare Provider Defendants' defenses in the instant lawsuit. If, for example, Phillips agreed to waive any future claims that he may have relating to his alleged knee and keloid conditions, then his claims in the instant lawsuit may be barred." (ECF No. 84, at 4). Corizon did not move to quash the subpoenas, and it is unclear whether Corizon received actual notice of or complied with the subpoenas.[5]

"[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26. Thus, regardless of whether the Court considers Plaintiff's Motion under Rule 45 or Rule 26, the Court must review Defendant's subpoenas under the relevancy standards set forth in Rule

---

[5] The United States Court of Appeals for the Fourth Circuit has not addressed whether a non-party subpoena must be personally served, but courts in this district have focused on whether the recipient has received "actual notice" of the subpoena. *Hall v. Sullivan*, 229 F.R.D. 501, 502-06 (D.Md. 2005). In addition, a party generally has standing to challenge a non-party subpoena only where the party "claims some personal right or privilege in the information sought." *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 441 n.12 (D.Md. 2012) (quoting *United States v. Idema*, 118 F.App'x 740, 744 (4th Cir. 2005)). Although it is unclear whether Corizon received actual notice and Plaintiff is challenging a subpoena issued to a non-party, the merits of the motion may be reached here because, as a party to the confidential settlement agreement, Plaintiff has a personal right in the confidential information sought by Defendants. Accordingly, he has standing to object to the subpoenas.

26(b)." *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 240-41 (E.D.Va. 2012) (citations omitted) (citing *Cook v. Howard,* 484 F.App'x 805, 812 (4th Cir. 2012) (per curiam)). Pursuant to Fed.R.Civ.P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

A subpoena which "requires disclosure of privileged or other protected matter," however, must be quashed or modified. Fed.R.Civ.P. 45(d)(3)(iii). The document subpoenaed here is a confidential settlement agreement, but "the Fourth Circuit, like the majority of courts, has declined to recognize a federal settlement privilege, and courts in this district have declined to apply a settlement privilege in discovery disputes." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Porter Hayden Co.*, No. CCB-03-3408, 2012 WL 628493, at *3 (D.Md. Feb. 24, 2012).

The *Phillips v. Murray* settlement agreement is not privileged and is relevant under the standard of Fed.R.Civ.P. 26(b)(1), and accordingly, it is discoverable.[6] The claims

---

[6] Plaintiff acknowledges in his reply that the Fourth Circuit does not recognize a settlement privilege and that the

Plaintiff brings here are nearly identical to the claims he brought in *Phillips*; they relate to the treatment of the same underlying medical conditions, at the same correctional institution, by some of the same medical professionals.[7]  The constitutional violations alleged here date from March 6, 2013, just two days after the filing of Plaintiff's stipulation of dismissal as to Corizon in *Phillips*.  Moreover, although Plaintiff argues that "Defendants seek here to discover a settlement agreement from a prior and distinct action" (ECF No. 89, at 2), Plaintiff himself has acknowledged the relevance of the previous case to his claims and Defendants' defenses.  In the same interrogatory responses in which he objected to producing the settlement agreement (ECF No. 84-4, at 35-36), he

---

agreement is not privileged.  Plaintiff argues, however, that even if the agreement is not privileged, it should be protected from discovery in accordance with the intent of Fed.R.Evid. 408, which excludes statements made in the course of settlement negotiations from evidence.  (ECF No. 89, at 3).  The relevance inquiry is distinct from admissibility at trial.  Fed.R.Civ.P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *see also Porter Hayden Co.*, 2012 WL 628493, at *3 ("[T]he Fourth Circuit has not imposed a settlement privilege with respect to discovery.  To the contrary, courts in this circuit have found that '*relevance* not *admissibility*, is the appropriate inquiry with regard to whether or not the information sought . . . is discoverable.' (quoting *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.,* 171 F.R.D. 179, 181 (D.Md. 1997) (alteration in original))).

[7] Two of the Defendants here, Defendants Ottey and Flury, were also defendants in the previous suit, although they do not appear to have been parties to the settlement agreement in dispute.  (*See* Consent Motion to Reopen Case, *Phillips*, No. DKC-11-0302 (D.Md. Jan. 16, 2013), ECF No. 87; Stipulation, *Phillips*, No. DKC-11-0302 (D.Md. Mar. 3, 2013), ECF No. 90).

also responded that "Defendants were long aware of these [medical treatment] needs, particularly given the prior lawsuit against some of them for similar conduct in *Phillips v. Murray*" (*id.* at 27; *see also id.* at 3 ("Defendant [Ottey] should have been aware of Plaintiff's knee injury and facial keloids beginning in February 2009. . . . These injuries were the subject of a prior lawsuit against Defendant Dr. Ottey and others, which was settled before trial. *See Phillips v. Murray*[.]")). Plaintiff also detailed his medical complaints between 2008 and 2014 in these responses, necessarily including those that were at issue in the previous suit. (*Id.* at 3-24). The settlement agreement is relevant under the liberal standard of Fed.R.Civ.P. 26(b)(1) and is discoverable.

Plaintiff also moves to quash the subpoena on the alternative ground that Defendants did not provide him with prior notice of the non-party subpoenas. (ECF No. 89, at 3-5). Defendants served a copy of the subpoenas on Plaintiff's counsel by mail the same day they served the subpoenas on the third parties by mail. Plaintiff argues that the plain text of Fed.R.Civ.P. 45 requires notice to the parties of a non-party document subpoena "*before* it is served on the person to whom it is directed," Fed.R.Civ.P. 45(a)(4) (emphasis added), and that failure to comply warrants quashing the subpoena.

Rule 45 does require notice to other parties before a subpoena commanding the production of documents is served on a

nonparty.  *Id.*   The "original purpose" of this notice requirement is to "enable[e] the other parties to object or to serve a subpoena for additional materials."  Fed.R.Civ.P. 45 advisory committee's note to 2013 amendment; *see also Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 380 (D.Md. 1999) ("When a party fails to receive prior notice of the information sought from a non-party, a party is deprived of its greatest safeguard under the Rule, that is, the ability to object to the release of the information prior to disclosure.").

> Upon a finding that notice was not given, "courts can either strike the subpoenas or allow the affected parties the opportunity to object."  *PagánColón v. Walgreens of San Patricio, Inc.*, 264 F.R.D. 25, 28 (D.P.R. 2010); *see also Biocore Medical Technologies, Inc. v. Khosrowshahi*, 181 F.R.D. 660, 668 (D.Kan. 1998).  "Delayed service alone, however, is not a basis to quash a subpoena.  The objecting party must also demonstrate prejudice."  *Malinowski v. Wall Street Source, Inc.*, No. 09 Civ. 9592(JGK)(JLC), 2010 WL 4967474, at *2 (S.D.N.Y. Nov. 23, 2010).

*Mayor & City Council of Baltimore v. Unisys Corp.*, No. JKB-12-614, 2013 WL 6147780, at *3 (D.Md. Nov. 21, 2013) (denying motion to quash where opposing party did not learn of non-party subpoena until three months after service because party suffered no prejudice); *cf. Potomac Elec. Power Co.*, 190 F.R.D. at 381-82 (ordering plaintiff to produce subpoenaed non-party documents to defendants and advise them of any intended use to alleviate prejudice, but denying motion for protective order to preclude

use where non-party subpoenas had been issued without prior
notice to defendants and at the close of discovery).

Plaintiff arguably received concurrent notice of the
subpoena rather than the prior notice required. Assuming
*arguendo* that this service violated Fed.R.Civ.P. 45(a)(4), the
violation does not warrant quashing the subpoenas as Plaintiff
cannot show prejudice. Plaintiff received notice of the
subpoena from Defendants, and accordingly, he was able promptly
to file this motion to quash prior to the production of any
documents. The "original purpose of enabling the other parties
to object" has therefore been satisfied. Fed.R.Civ.P. 45
advisory committee's note to 2013 amendment. Moreover, as
Plaintiff was a party to the agreement sought from Corizon, he
already had access to the discovery sought. Plaintiff received
notice of the subpoena, had an opportunity to object, and had
access to the subpoenaed material. He accordingly has not shown
prejudice from concurrent notice of the document subpoena, and
the subpoenas will not be quashed on this ground.

The settlement agreement is relevant and not privileged.
There has been no showing of burden or expense related to this
discovery, but Corizon presumably has a copy of the agreement in
its possession as a party to it, and the burden of production
should be minimal. If Defendants' notice was a violation of
Fed.R.Civ.P. 45(a)(4), the concurrent notice did not prejudice
Plaintiff. Plaintiff's motion to quash will be denied.

## III. Motion for Protective Order

Plaintiff has requested access to his complete medical records, including mental and psychological evaluations, in discovery, and Defendants have moved for a protective order pursuant to Fed.R.Civ.P. 26(c) regarding Plaintiff's access to his mental health records. (ECF No. 85). The scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and may be further limited in scope, frequency, and extent by the court. Fed.R.Civ.P. 26(b). For good cause shown, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order prohibiting the disclosure or proscribing terms or a method for the discovery. Fed.R.Civ.P. 26(c).

The contested mental health records, which have been filed under seal (ECF No. 86-1), do not concern the treatment of Plaintiff's physical conditions that are the basis of the complaint, and accordingly do not appear to be relevant to this case and within the scope of discovery.[8] Defendants do not

---

[8] The mental health records contain notes and assessments made during 2015 and 2016 while Plaintiff was incarcerated at Patuxent, and therefore also fall outside the relevant March 2013 to March 2014 time frame of the amended complaint. As discussed below, Plaintiff has moved to supplement the amended complaint, but it is unclear whether Plaintiff intends to include allegations relating to his care at Patuxent or to the time period of the mental health records. Regardless, Plaintiff has not stated any claims related to his mental health care.

object to the production of these records, however, so long as they are designated for "attorney's eyes only" and not disclosed directly to Plaintiff. (*See* ECF No. 85, at 1-2). Defendants argue that the records contain "highly sensitive" information regarding Plaintiff's "social history and psychiatric history," and "also describe and assess Phillips' personality, including findings and diagnoses, and the security risk that he poses." (ECF No. 85-1, at 2). The records contain analyses and diagnoses of Plaintiff's psychological conditions, as well as observations from group sessions, made by several health care providers at Patuxent to determine Plaintiff's eligibility for a rehabilitation program. (*See id.*; ECF No. 90, at 1). These evaluations have not previously been provided to Plaintiff. While Plaintiff is no longer incarcerated at Patuxent, he is currently serving a 120 year sentence (*see* ECF No. 94-1 ¶ 18.a), and Defendants argue that Plaintiff may again encounter his evaluators at North Branch, Patuxent, or another institution during his incarceration (ECF Nos. 85-1, at 3; 94, at 4). Defendants note that Plaintiff has a history of violent behavior, including recent incidents at North Branch, and aver that allowing Plaintiff to review his own mental health records "raises serious security concerns for both correctional staff and the evaluators." (ECF No. 85-1, at 3; *accord* ECF Nos. 94, at 4; 94-2 ¶¶ 5-8).

Plaintiff contends that Defendants' refusal to disclose the records constitutes a violation of the Maryland Confidentiality of Medical Records Act, Md. Code Ann., Health-Gen. §§ 4-301-309, and that he has a "right to access his mental health records" under Maryland Department of Public Safety and Correctional Services regulations, Md. Code Regs. 12.02.24.07. (ECF No. 90, at 2-3). Plaintiff further argues that Defendants have offered only vague and speculative claims of harm in moving for a protective order, and accordingly have failed to show good cause. In particular, he notes that Defendants have shown no evidence that Plaintiff will be incarcerated at a facility other than North Branch in the future or that the Patuxent evaluators will work at North Branch, and argues that Defendants have not provided sufficient evidence or specificity as to the security concerns alleged. (*Id.* at 6).

Plaintiff does not have an unqualified right to access his mental health records under state or federal law. Maryland law does not guarantee a patient's access to his psychiatric or psychological records, but rather gives health care providers the discretion to refuse to disclose portions of those records even to the patient. Md. Code Ann., Health-Gen. § 4-304(a)(2). Plaintiff characterizes section 4-307, Confidentiality of mental health records; disclosure, as a list of exclusive exceptions from the otherwise absolute right of a person in interest to access his mental health records, but these provisions are

better understood as providing additional restrictions on the disclosure of mental health records in specific circumstances. *See id.* § 4-307(b) ("The disclosure of a medical record developed in connection with the provision of mental health services shall be governed by the provisions of this section in addition to the other provisions of this subtitle."). The provisions of section 4-307 do not directly address a patient's right of access except in the context of mental health evaluations related to employment. *Id.* § 4-307(f). Instead, they are primarily concerned with ensuring the confidentiality of mental health records.[9] The Confidentiality of Medical Records Act affords significant protections to Plaintiff's mental health records to prevent their disclosure, but it does not guarantee his own access.

Petitioner also argues that the Maryland Department of Public Safety and Correctional Services regulations "confirm that Plaintiff has the right to access his mental health records." (ECF No. 90, at 2). Under the regulations, an inmate has the right to *request* access to psychological information in his case record through a written request to the warden. Md.

---

[9] The provisions generally provide additional protections to prevent the disclosure of mental health records; for example, limiting disclosures made without the authorization of a person in interest, Md. Code Ann., Health-Gen. § 4-307(c); limiting the disclosure of a provider's personal notes, *id.* § 4-307(d); limiting disclosure to preserve the objectivity of psychological tests, *id.* § 4-307(e); and limiting disclosure of records that relate to or identify more than one recipient in group or family therapy, *id.* § 4-307(g).

Code Regs. 12.02.24.07(F).   An inmate does not have a right to *receive* such access, however.   The regulations provide that the disclosure determination is to be made by the inmate's warden, in consultation with the appropriate psychology staff and according to the provisions of section 4-307.   *Id.*   The regulations provide procedures for when access is granted and for when access is denied, and detail the procedure for an appeal of a warden's decision to deny access to the Commissioner of Correction.   *Id.;* 12.02.24.07(H).   Similarly, federal regulations provide that:

> [A] correctional institution or a covered health care provider acting under the direction of the correctional institution may deny, in whole or in part, an inmate's request to obtain a copy of protected health information, if obtaining such copy would jeopardize the health, safety, security, custody, or rehabilitation of the individual or of other inmates, or the safety of any officer, employee, or other person at the correctional institution or responsible for the transporting of the inmate.

45 C.F.R. § 164.524.[10]

At issue here is whether Defendants have shown good cause sufficient to warrant a protective order restricting access to these mental health records to Plaintiff's counsel.   Maryland

---

[10] Plaintiff argues that Maryland's law is not preempted by the federal regulations because Maryland provides for greater patient access to records and is accordingly more stringent. *See* 45 C.F.R. § 160.202(6), 203(b).   The question of federal preemption need not be decided here because even if Maryland law is not preempted, it does not provide an unqualified right of access to mental health records to patients generally or to inmates in particular.

law defers to health care providers' determinations of the suitability of disclosure of mental health records to patients. Furthermore, both state and federal regulations recognize the security risks such disclosure may present when the patient is incarcerated, to the patient as well as to others, by putting the disclosure decision in the warden's discretion and instructing providers to take those risks into account. Defendants, Plaintiff's health care providers, have raised serious safety concerns regarding the disclosure of Plaintiff's mental health records. Moreover, as the record does not reflect that Plaintiff has made a request to review his mental health records to the North Branch warden as required by the regulations, Plaintiff simply appears to be attempting to circumvent the limitations on inmate case record access through use of the discovery process. Plaintiff does not have an unqualified right of access to his mental health records, and, as they are not at issue in this litigation, it would not be appropriate for this court to make the disclosure determination that Maryland law places within the discretion of Plaintiff's health care providers and warden. Defendants have shown good cause for a protective order and their motion will be granted. The mental health records may be produced under a designation of "attorney's eyes only."[11]

---

[11] Defendants have moved to place exhibit 2 to their motion for protective order, the mental and psychological evaluations

## IV.  Plaintiff's Motion to Seal

Plaintiff filed an exhibit to his opposition to Defendant's motion for protective order that contained personal identifiers (ECF No. 90-1), and subsequently filed a motion to seal that exhibit and replace the filed version with a redacted version (ECF Nos. 91; 91-1).  Pursuant to the Federal Rules of Civil Procedure:

> Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:
>
> (1) the last four digits of the social-security number and taxpayer-identification number;
>
> (2) the year of the individual's birth;
>
> (3) the minor's initials; and
>
> (4) the last four digits of the financial-account number.

Fed.R.Civ.P. 5.2(a).  Under the United States District Court for the District of Maryland's Privacy Policy for civil cases, parties are instructed to redact in their entirety Social Security numbers, financial account numbers, and dates of birth,

---

contained in Plaintiff's medical record, under seal.  (ECF No. 86).  Plaintiff has not contested this motion.  As discussed above, the exhibit contains confidential mental health medical records, and, as Defendants note, filing them publicly would also undermine the purpose of the protective order. Accordingly, sealing the records is necessary.  Defendants' motion will be granted, and exhibit 2 (ECF No. 85-3, filed under seal at ECF No. 86-1), will remain under seal.

unless relevant to the case or otherwise ordered by the court. (Privacy Policy – Civil Cases (2004) ¶¶ 1-2(a), *available at* http://www.mdd.uscourts.gov/Misc/privacypolicyprocedures.pdf).

Plaintiff's proposed redaction does not redact Plaintiff's date of birth, and therefore does not comply with Fed.R.Civ.P. 5.2 or the District of Maryland's policy.  Plaintiff's motion to seal will be granted, and the exhibit (ECF No. 90-1) will remain under seal, but Plaintiff will be instructed to refile a redacted version within fourteen days.  The court further notes that Defendants have not redacted Plaintiff's personal identifiers in an exhibit to their reply in support of the motion for protective order.  (ECF No. 94-1).  This exhibit will be placed under seal as well, and Defendants will be instructed to refile a redacted version within fourteen days.  The parties are encouraged to review their public filings.  If further redactions of personal identifiers are necessary, the parties may request that the document be withdrawn and promptly refile the document with appropriate redactions, and must redact personal identifiers in all public filings going forward unless otherwise ordered.  A motion to seal need not be filed.

**V.    Motion to File a Supplemental Complaint**

Plaintiff has moved for leave to file a supplemental complaint pursuant to Fed.R.Civ.P. 15(d).

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that

> happened after the date of the pleading to
> be supplemented.    The court may permit
> supplementation even though the original
> pleading is defective in stating a claim or
> defense.    The court may order that the
> opposing party plead to the supplemental
> pleading within a specified time.

Fed.R.Civ.P. 15(d).  A supplemental complaint therefore concerns
events that have occurred after the date of the operative
pleading, while an amended complaint relates to matters that
occurred prior to the date of the pleading.  *See Reyazuddin v.
Montgomery Cty., Md.*, No. DKC 11-0951, 2012 WL 5193837, at *3
(D.Md. Oct. 18, 2012) (citing *Connectu LLC v. Zuckerberg*, 522
F.3d 82, 90 (1st Cir. 2008)).  Despite this distinction, "the
standards used by a district court in ruling on a motion to
amend or on a motion to supplement are nearly identical."
*Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002).  "In
either situation, leave should be freely granted, and should be
denied only where 'good reason exists . . ., such as prejudice
to the defendants.'"  *Id.* (alteration in original) (quoting
*Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir.
2002)).

Plaintiff did not file his proposed supplemental pleading
with his motion to supplement, complicating the court's
analysis.  The operative pleading in this action is the amended
complaint, which identifies the relevant time period of
Plaintiff's allegations as March 6, 2013, through March 8, 2014,
and alleges that all of the violations occurred at North Branch.

(ECF No. 45 ¶¶ 7, 27). The amended complaint does not allege ongoing harm, and it does not seek injunctive relief. Plaintiff avers that he does not intend to name additional defendants or add causes of action in his supplemental complaint, but instead seeks to add additional allegations of deficient medical care pertaining to the same knee injury and skin disorder that have occurred since the filing of his complaint. Specifically, Plaintiff alleges that he has not received a renewed authorization for a bottom bunk, as is necessitated by his knee pain, or a renewed authorization for facial hair trimmers, as is necessitated by his facial keloids. (ECF No. 93, at 3). Defendants argue that supplementing the amended complaint to add these allegations will prejudice them because they have already taken Plaintiff's deposition and access to a bottom bunk and facial hair trimmers are "new claims" which "will require additional discovery." (ECF No. 96, at 3-4). Defendants also argue that Plaintiff "cannot bring his claims against Defendants 'up to date'" because the health care provider Defendants are not currently providing him treatment. (*Id.*).

The allegations Plaintiff seeks to add to his amended complaint appear to relate to the same harms he pled in the amended complaint, and Plaintiff had additionally alleged in the original complaint that Defendants had failed in the past to renew his authorizations for a bottom bunk and facial trimmers. (*See* ECF No. 1 ¶¶ 13, 26). Moreover, discovery has not yet

closed, it does not appear from the briefing that these allegations will require significant additional discovery, and Plaintiff was in fact already asked about his current medical treatment, including his current assignment to a top bunk and lack of authorization for facial trimmers, during his recent deposition. (*See* ECF No. 101, at 3-5). The interests of judicial economy will likely be best served by considering all of Plaintiff's allegations of past failures to provide medical care along with his allegations that these failures are continuing.

It is unclear from Plaintiff's briefing, however, whether the supplemental complaint will allege constitutional violations by health care providers at Patuxent, which could necessitate further discovery and arguably cause prejudice. Plaintiff was incarcerated at Patuxent from May 2015 through April 2016, and states that he received "some treatment" while at Patuxent, which "ceased upon Plaintiff's transfer back to [North Branch]." (ECF No. 93, at 2-3). He does not clarify, however, whether he intends to allege that the care received at Patuxent was constitutionally deficient. Plaintiff also repeatedly refers to a lack of treatment "[o]ver the past eight years," and references "longstanding" issues. (ECF No. 93, at 3, 5). The amended complaint dates the alleged harms only from March 6, 2013, and discovery has presumably been limited by that timeframe. In addition, Plaintiff was previously involved in

litigation on these issues against some of the same Defendants before that date, potentially raising additional issues if Plaintiff intends to include allegations of earlier harm. If Plaintiff intends to include allegations before March 2013, he would need to move for leave to file an amended complaint instead of a supplemental complaint.[12] Accordingly, Plaintiff will be instructed to supplement his motion with a copy of his proposed supplemental complaint before his motion for leave to file a supplemental complaint is decided.

## VI. Conclusion

For the foregoing reasons, the motion to quash subpoena filed by Plaintiff Arthur Phillips will be denied; the motion for protective order filed by Defendants Colin Ottey, Ava Joubert, Greg Flury, Katie Winner, Carla Buck, Kristi Cortez, and Wexford Health Sources, Inc. will be granted; the motions to seal will be granted; and Plaintiff Arthur Phillips will be instructed to supplement his motion for leave to file a supplemental complaint with his proposed supplemental complaint.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[12] As the scheduling order deadline for amendment of the pleadings was August 31, 2015 (ECF No. 43), a motion for leave to file an amended complaint must satisfy both Fed.R.Civ.P. 15(a) and Fed.R.Civ.P. 16.